347 So.2d 946 (1977)
Orlando G. BENDANA
v.
MOSSY MOTORS, INC., et al.
No. 8285.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1977.
*947 Orlando G. Bendana in pro. per.
W. K. Christovich, Christovich & Kearney, New Orleans, for Mossy Motors, Inc.
David L. Campbell, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for General Motors Corp.
*948 Before REDMANN, STOULIG and MORIAL, JJ.
REDMANN, Judge.
Defendant General Motors Corporation appeals from a judgment for $4,817.54 for damages arising from plaintiff's purchase and use of a 1967 Oldsmobile 98 automobile.
Defendant expressly warranted the engine for 50,000 miles or five years and the cooling system for 24,000 miles or two years. However, defendant obliged itself by its warranty only to repair, and not to pay consequential damages. A finding that defendant refused to honor its warranty might justify a judgment rescinding the sale for non-performance of a condition of the sale. However, the judgment appealed from awarded an amount greater than the price-equivalent plus damages attributable to dishonor of the warranty. Thus it was presumably based on the Louisiana implied warranty against hidden defects known to the seller, La. C.C. 2545, which authorizes recovery of all damages (even if only reduction of price is the basic remedy; see C.C. 2544).
Plaintiff experienced repeated serious breakdowns of his automobile after 18,000 miles and 18 months of use. The first occurred at Salida, Colorado when the car, with plaintiff driving and two other adults, three 11-year-old children and two infants as passengers, was towing a 2,300-pound camping trailer. Plaintiff felt the car "hesitating" and "lurching" but continued to drive until it came to a halt. Considerable engine repair, requiring two and a half weeks, had to be done by the Salida Oldsmobile agency as a result of overheating. (Main bearings and others were replaced, as were both cylinder heads, the rings, a piston, some valves, etc.) Plaintiff rented a car to reach his family's intended vacation site, Crested Butte, Colorado. The day his car was returned to him [1] it broke down again at Gunnisen, 50 miles outside Salida on the way to Crested Butte, while it was neither loaded down with weight nor towing the trailer. The Oldsmobile agency at Gunnisen repaired the car, taking about a week (again replacing a head). The car again began to overheat about 50 miles outside of Gunnisen, and after leaving his trailer (to recover which he sent an employee with a truck), plaintiff drove to Dalhart, Texas, adding water to his radiator every 20 miles or so. The Oldsmobile agency at Dalhart undertook to repair the car, while plaintiff and his passengers (family and servant) returned to New Orleans by air. Plaintiff sent an employee to Dalhart by air to recover the car when it was ready a week later.
(At this time plaintiff demanded that General Motors afford him relief beyond repair of his car, including repayment of the added travel expenses he incurred. He then sued General Motors in the United States district court, but that suit was ultimately dismissed for want of jurisdictional amount.)
About nine months later, while plaintiff and a friend were on a trip to go canoeing (towing no trailer but with a canoe atop the car), the car again overheated and was taken to the Oldsmobile agency at Alexandria, Louisiana. General Motors informed the Oldsmobile agency that it would not pay for the necessary repairs, and the agency did nothing until plaintiff returned a week later and obtained a guarantee from counsel for General Motors that plaintiff (who is also a lawyer) would pay the cost of the repairs. Those last repairs again included replacing both heads.
Plaintiff thereafter instituted this suit for rescission of the sale and damages under Louisiana's implied warranty law. However, he subsequently traded the car towards another.
The evidence establishes the existence of some defect which rendered the car's "use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." C.C. 2520.
*949 The provisions in the documents delivered with plaintiff's car attempting to limit warranty to the express warranty "have no effect upon the statutory warranty of fitness"; Media Prod. Consult. Inc. v. Mercedes-Benz N.A., Inc., 1972, 262 La. 80, 262 So.2d 377, 380. "Warranty limitation provisions in `Buyers' Order' documents and automobile service manuals have no effect on the implied warranty against hidden defects." Prince v. Paretti Pontiac Co., Inc., La. 1973, 281 So.2d 112, 116.
General Motors argues that the car was not defective, but that plaintiff ruined the car by towing a low-medium-weight (2300 lb.) trailer without a heavy-duty cooling system, which its own literature "recommended" ("for unusually high temperatures, heavy traffic or hilly terrain") for medium trailers (XXXX-XXXX lbs.) and "required" for heavy trailers (XXXX-XXXX lbs.). Apparently General Motors has succumbed to the saw that the best defense is an offense, for this defense is an offense against fairness. Had the literature advised that extra cooling is "required" for trailer-towing  although defendant never presented evidence to explain why  this defense would support discussion. But to "recommend" extra cooling for trailer-towing gives no hint that the engine will burn up without it. Nor was a trailer being towed on the second or fourth breakdown.
Furthermore, plaintiff and the friend (who happened to be driving at the last breakdown) both testified that the temperature light that is designed to warn of overheating never came on. Thus, assuming (because it was not proven) that a defect in the cooling system caused damage to the engine (rather than vice versa, an admitted likelihood), the engine had also to have some hidden defect in its temperature warning system.
Defendant also argues that plaintiff did not "prove that the vice existed before the sale was made to him" as C.C. 2530 requires. Civil proof need only establish a fact as more probable than not; Boudreaux v. American Ins. Co., 1972, 262 La. 721, 264 So.2d 621. Such proof has been made by showing that mechanical elements designed and warranted for 24,000 or 50,000 miles of use fail long before that use without any improper installation or maintenance; Moreno's Inc. v. Lake Charles Cath. H.S., Inc., La. 1975, 315 So.2d 660. Defendant's only suggestion was that the defective conditions could have been caused by trailer-towing in mountains in July without a heavy-duty cooling system. This suggestion, however, ignores the problem of the defect of non-function of the warning light. Otherwise it would invite a ruling on recission for lack of instructions; see Rey v. Cuccia, La. 1974, 298 So.2d 840, 844, n. 2; Malinvaud, Redhibitory Defects and Their Importance in Contemporary Society, 1976, 50 Tulane L.Rev. 517, 524-525.
We conclude that the trial court had sufficient evidence to support its conclusion that some defect existed in the engine or cooling system or both prior to the sale to plaintiff, and that the defect was within the definition of redhibitory defect.
Because defendant was unwilling to accept its return, plaintiff traded the car against a new one, receiving credit of $1,818. His redhibitory action must therefore become one quanti minoris for reduction of the price of the thing.

Quantum
The amount the trial judge awarded appears to allow all of the expenses plaintiff testified to except $180.60 (erroneously identified as a one-way ticket for an employee to get the car, when in fact it was a round-trip ticket for plaintiff himself, not shown to be related to the non-serviceability of the car) and probably another $36 (from an error in transposing a $237 repair into $273). The allowed expenses were thus $1,360.18.
Apparently, also, the trial judge calculated some return of the price, $5,603.36 (including financing costs), less the $1,818 which plaintiff got for the car when he traded it in, or $3,785.36. However, the total of $3,785.36 and the expense of $1,360.18 is $5,145.54, which is $328 more *950 than the amount of the judgment. Although that $328 has no ready explanation, we note that the congruence of the 54-cent figures persuades us that the trial judge did base his calculation in part either on a return of purchase price or on the theory that the trade-in value of $1,818 was the worth of the car at the time of purchase (over two years and 26,000 miles earlier). This was error.
Return of price is the result of redhibition; C.C 2531 and 2545. But because redhibition is the "avoidance of a sale", C.C. 2520, it entails obliging the buyer to return the thing unless the thing "has perished through the badness of its quality", C.C 2532, or its "loss was not occasioned by the fault of the purchaser", C.C. 2536. Here the thing has neither perished nor been lost; it has been sold or exchanged. A buyer who has resold the thing cannot demand return, but only reduction, of the price, Brown v. Duplantier, La. 1823, 1 Mart. N.S. 312. Accordingly, plaintiff's only remedy is for "a reduction of the price", C.C. 2541 and 2543, an action "subject to the same rules. . . as the redhibitory action", C.C. 2544.
The question of how much the original sale price should be reduced is not directly related to the price obtained on resale. "Whether a vendor, who has a deceit practiced on him in the sale, gain or lose by the subsequent sale of the thing, his right to the action quanti minoris remains perfectly the same." Brown v. Duplantier, supra, at 318.
An immediate resale to a knowledgeable and willing buyer informed of the defect might evidence the market value of the thing in its defective condition, but that is not our case. The trial judge had the task (formerly assigned by Digest of 1808, p. 356, art. 70, to "able men") of estimating the amount of reduction. It is our function on appeal to decide whether his estimate was reasonable.
In estimating, the judge appropriately considers not only the cost of repairs but also "the numerous problems, the frequent inconvenience associated with breakdowns and repairs of these problems, and the overall poor performance in relation to that expected . . .", Menville v. Stephen Chevrolet, Inc., La.App. 4 Cir. 1974, 300 So.2d 858, writ refused, La., 303 So.2d 186. Expenses due to breakdowns were $1,360.18. Thus the judgment for $4,817.54 had to include a price reduction of $3,457.36 (unless it included general damages, which are impermissible; Meador v. Toyota of Jefferson, Inc., La. 1976, 332 So.2d 433). $3,457.36 is a facially excessive reduction since the car only cost $5,172.68 (excluding finance charges etc.).
We estimate that a reasonably knowledgeable buyer, informed of the defects and their consequences, would have paid $1,500 less than the normal price of the car, since for that amount he could probably have replaced the engine.
Because the manufacturer is charged with knowledge of the defect, Moreno's, supra, it is liable for consequential damages in a redhibition case, C.C. 2545, and "the action for a reduction of price is subject to the same rules . . . as the redhibitory action", C.C. 2544. The manufacturer is therefore liable for the $1,360.18 of expenses attributable to the defects, and for a reduction in price in the amount of $1,500.
Judgment is reduced in principal to $2,860.18 and is otherwise affirmed.
NOTES
[1] So plaintiff testified. However, the first repair documents indicate the car then had 18,000 miles exactly on its odometer, and second repair documents show 19,391 miles.