377 So.2d 1325 (1979)
Quintin Leroy GUSTIN and Mrs. Mary Ann Alongio Gustin, Plaintiffs and Appellees,
v.
Ellis A. SHOWS, Mrs. Bonnie Pittman Shows and Shows Enterprises, Inc., Defendants and Appellants.
No. 12890.
Court of Appeal of Louisiana, First Circuit.
November 12, 1979.
*1326 John Wayne Jewell, New Roads, counsel for plaintiffs-appellees.
Randall C. Songy, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, *1327 Lafayette, counsel for defendants-appellants.
Before EDWARDS, LEAR and SARTAIN, JJ.
EDWARDS, Judge.

I. FACTS
On June 25, 1973, Quintin Leroy Gustin and Mrs. Mary Ann Alongio Gustin, sold to Ellis A. Shows and Mrs. Bonnie Pittman Shows, the "Rest-A-While Nursing Home" for $125,000.00. The Shows paid $80,000.00 in cash and signed a note for the remaining $45,000.00. The note was secured by a mortgage on the nursing home.
The nursing home was sold by the Shows to Shows Enterprises, Inc., on January 1, 1974. The sale price was $130,065.32 and Shows Enterprises, Inc., assumed payment of the original $45,000.00 not as part consideration for the sale.
The Gustins filed suit on August 3, 1977, against all defendants alleging that certain payments on the $45,000 note had not been made. Judgment for the balance due was sought along with recognition of the Gustin's mortgage.
On November 4, 1977, the Shows answered and filed a reconventional demand seeking rescission of the June 25, 1973, sale on the basis of redhibition.
The Gustins filed peremptory exceptions of prescription and no right and/or no cause of action against this reconventional demand.
On trial of the exceptions, the reconventional demand of Shows Enterprises, Inc., was dismissed since the corporation had filed for bankruptcy and all proceedings involving it were stayed.
Following trial of the exceptions, the district court sustained both exceptions and dismissed the Shows' reconventional demand. The Shows have perfected this appeal. We affirm the result while rejecting certain grounds for the decision.

II. NO RIGHT AND/OR NO CAUSE OF ACTION
The Gustins originally filed two peremptory exceptions, one of prescription and one of no right and/or no cause of action. The trial court sustained both.
There is, in Louisiana law, no single exception of no right and/or no cause of action. They are separate and distinct, each serving a particular purpose and each following particular procedural rules. LSA-C.C.P. 927(4) and (5).
No cause of action raises the issue of whether the law grants a remedy to anyone for the particular harm alleged by the plaintiff. Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972); Bamber Contractors, Inc. v. Henderson Brothers, Inc., 345 So.2d 1212 (La.App. 1st Cir. 1977).
In cases where the law does grant a remedy to certain persons for the particular harm alleged by the plaintiff, the exception of no right of action raises the issue of whether the plaintiff belongs to that particular class to which the law grants the remedy. Babineaux, supra; Bamber, supra.
When the exception of no cause of action is raised, all the pleadings of the plaintiff's petition are accepted as true and no evidence is admissible to support or defeat the exception. If evidence has incorrectly been admitted in connection with another exception tried at the same time, such evidence may not be considered for purposes of sustaining an exception of no cause of action. LSA-C.C.P. 931; Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3rd Cir. 1967); Babineaux, supra; Bamber, supra.
Evidence supporting or controverting the exception of no right of action is admissible. LSA-C.C.P. 931; Bielkiewicz v. Rudisill, supra.
Finally, the defendant may not use the exception of no right of action to urge that plaintiff has no right of action simply because there is a valid defense to the claim. Any such defense must go to the merits only. The sole issue at trial of the exception is whether the plaintiff is in that group granted possible recovery by the law, *1328 not whether the plaintiff will or will not recover. Bamber, supra; Bielkiewicz, supra.

III. NO CAUSE OF ACTION
The Shows alleged in their reconventional demand that the nursing home had redhibitory vices. They alleged that the Gustins had knowledge of such vices and prayed for rescission of the sale, damages and attorney's fees. Considering only the pleaded facts of the reconventional demand, the Shows clearly made out a cause of action in redhibition. It was, therefore, error for the trial court to find no cause of action.

IV. NO RIGHT OF ACTION
The Gustins urge that the Shows had no right of action because at the time the reconventional demand based on redhibition was filed, the nursing home had been sold to a third party. Evidence showed that not only had the Shows divested themselves of the nursing home, but also that they had made a $5,065.32 profit over the original sale price.
To rescind a sale, the vendee must have ownership of the purchased property or its return to the vendor would be impossible. Ownership is not required, however, to maintain an action for quanti minoris. LSA-C.C. 2520, 2543; Bendana v. Mossy Motors, Inc., 347 So.2d 946 (La.App. 4th Cir. 1977); George v. Shreveport Cotton Oil Co., 114 La. 498, 38 So. 432 (1905); Blymyer Ice-Mach. Co. v. McDonald, 48 La.Ann. 439, 19 So. 459 (1895).
Jurisprudence holding that a vendee may maintain an action for quanti minoris against the vendor even where the vendee has resold the property for a profit is of very long standing. Ehrlich v. Roby Motors Co., 166 La. 557, 117 So. 590 (1928); Bonzano v. Auze, 10 La.Ann. 188 (1855); Brown v. Duplantier, 1 Mart.(N.S.) 312 (1823). See also, 28 Tul.L.R. 130, 132 (1948).
Thus, despite the Gustins' most forceful claims of "absurd results" and "unjust enrichment," the Shows most certainly did have a right of action for the reduction in price of the nursing home. The trial court erred in not finding so.

V. PRESCRIPTION
Louisiana's time limitations for actions in redhibition are provided by Civil Code Articles 2534 and 2546. Article 2534 provides in pertinent part:
"The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale.
This limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser."
Article 2546 provides:
"In this case, the action for redhibition may be commenced at any time, provided a year has not elapsed since the discovery of the vice.
This discovery is not to be presumed; it must be proved by the seller."
On trial of the exception of prescription, the issue of whether an alleged vice is, in fact, a vice sufficient to rescind the sale or even cause a reduction in price is not at issue. What is at issue is whether a year passed between the sale and filing of the action and, if a year had so passed, whether the vendor knew of the alleged vice and failed to disclose that fact to the vendees, in which case an added issue is whether the vendees filed suit within a year following their discovery of the alleged vice.
The party pleading prescription has the burden of proving same. Chin See Fun v. Louisville and Nashville Railroad Company, 344 So.2d 8 (La.App. 4th Cir. 1977), writ denied 346 So.2d 210 (1977). However, where prescription has tolled on the face of the petition, the buyer bears the burden of showing the claim has not prescribed. Guardian Funds, Inc. v. Medallion Insurance Agency, Inc., 359 So.2d 1335 (La.App. 4th Cir. 1978); Wooden v. Hartford Insurance Company, 335 So.2d 742 (La.App. 2d Cir. 1976); Tassin v. Allstate Insurance Company, 310 So.2d 680 (La.App. 4th Cir. 1975), writs refused 313 So.2d 836 (1975).
In the present case, the nursing home was first sold on June 25, 1973. The Shows' reconventional demand was not filed until *1329 November 4, 1977, and therefore under LSA-C.C. 2534 the action in redhibition had prescribed. However, the Shows stress that the sellers were in bad faith, that no alleged vice was discovered by the Shows until November 11, 1976, and that the November 4, 1977, reconventional demand was timely.
The Shows' brief urges that since the vendors were in bad faith, the Gustins must bear the burden of LSA-C.C. 2546 and prove the Shows discovered all alleged vices more than one year prior to filing suit.
This line of argument is clearly erroneous and completely ignores the rule of Guardian Funds, Wooden and Tassin, supra. The Shows, whose action has prescribed on its face, must prove the Gustins were in bad faith before the rules of LSA-C.C. 2546 apply.
At trial of the exception, evidence was properly admitted under LSA-C.C.P. 931. The evidence supports a finding that while the Gustins may have known of the only alleged vice ultimately claimed by the Shows, rooms which were too small to permit continued licensing, that knowledge was clearly declared to the Shows.
Mrs. Mary Ann Gustin testified that she knew of no defect that would have caused delicensing of the nursing home (T-29, 134), that she possessed a letter from the licensing authorities permitting her to operate the nursing home despite room size irregularities (T-38, 135), that she conveyed knowledge of the alleged vice (T-137, 140), and that the letter of waiver was given to the Shows and should be retained by them (T-39, 139, 140).
Doretha Debetaz, secretary for the Gustins, testified that Mrs. Gustin told her the letter of waiver was in the file (T-69, 70).
Marvin Jackson, the licensing supervisor for Louisiana health facilities, read the letter of waiver (T-83), stated that he wrote and sent it (T-84), that there was no time limitation on the letter's effect (T-85), and that in June of 1973 there was no way for someone to know of any future licensing requirements which would arise (T-97, 98).
Mrs. Bonnie Shows three times testified that Mrs. Gustin did inform her of the Jackson letter of waiver in the file (T-57, 76, 161).
As we read the transcript, it is clear that the Shows have not carried their burden of proving that the Gustins knew of the alleged vice and failed to disclose that knowledge. Testimony established that the Gustins knew about possible problems regarding room size irregularities. Their fears were allayed by the letter of waiver. The potential problems and the letter of waiver were conveyed to the Shows, which Mrs. Bonnie Shows three times admitted.
The trial court evidently found no bad faith on the Gustins' part. We concur with his finding and, based on a careful reading of the record, see nothing to establish that the trial court's finding was manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (1978).
Without a finding of bad faith, LSA-C.C. 2534 applies and the Shows' action prescribed in 1974. Dismissal of that action was proper.
For the foregoing reasons, the judgment maintaining the Gustins' exception of prescription and dismissing the Shows' reconventional demand will be upheld.
All costs of this appeal are to be paid by the Shows, plaintiffs in reconvention.
AFFIRMED.