460 So.2d 772 (1984)
Jerry HARKINS, d/b/a Harkins Construction, Plaintiff-Appellee,
v.
HOWARD LUMBER COMPANY, INC., Defendant-Third Party Plaintiff-Appellant,
Port Barre Lumber Industries, Inc., Third Party Defendant-Appellant.
No. 83-1086.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1984.
*773 Guglielmo & Lopez, James C. Lopez, Opelousas, Gahagan & Gahagan, Marvin F. Gahagan, Natchitoches, for defendant-appellant.
Kelly & Salim, Michael I. Murphy, Natchitoches, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and KNOLL, JJ.
DOMENGEAUX, Judge.
Plaintiff brought this suit against Howard Lumber Company, Inc. seeking to recover damages which he suffered as a result of having purchased allegedly defective redwood siding. The defendant answered the suit and brought in as a third party defendant, Port Barre Lumber Industries, Inc., from whom the siding had been originally purchased. Port Barre filed an answer admitting that it did sell the redwood siding but denied that it had manufactured the lumber. After trial of the *774 matter the lower court rendered judgment in favor of the plaintiff and against the defendant, awarding him the following damages: (A) Total labor cost for putting new siding and removing old siding $2,117.24; (B) Cost of interim financing $5,024.55; (C) Original purchase price of redwood siding$2,611.39; (D) Cost of replacement lumber from Rodney McNeal and Sons$4,773.06; (E) Cost of removing old siding$430.00; (F) Insulation damage due to removal of old siding$201.60. The trial court also rendered judgment in favor of the defendant on its third party demand against Port Barre Lumber Industries, Inc.
Howard and Port Barre have perfected appeals claiming that the trial court committed the following reversible errors: (1) In finding that the redwood siding was defective; and (2) In awarding damages in excess of the original purchase price. Port Barre also claims the trial court was in error in granting Howard its third party demand.
Following the lodging of the appeals, Howard and Port Barre filed exceptions of prescription in this Court urging that the instant action was one in redhibition and had prescribed. The appellants claim that the siding was purchased in March and April of 1979, plaintiff discovered the defects in July of 1979, and the instant suit was not filed until February 24, 1981. It is thus the appellants' theory that plaintiff's claim had prescribed.
It is clear that redhibitory actions prescribe one year after the sale if the seller is in good faith. La.C.C. Art. 2534. Redhibitory actions prescribe one year after the discovery of the vice if the seller is in bad faith. La.C.C. Art. 2546. Under these articles suit must be brought within one year, at the latest, from the date of the discovery of the defects. Tidewater, Inc. v. Baldwin Lima Hamilton Corporation, 410 So.2d 355 (La.App. 4th Cir.1982).
Notwithstanding the above articles, we nevertheless find appellants' claim of prescription to be invalid because we do not view this case as one of a "defective" product. It is rather a situation where the seller promised to supply a product of a certain quality but instead delivered a product of a lesser quality. The testimony adduced at trial and the purchase invoice shows that the siding purchased was to be a "clear grade" of redwood siding. "Clear grade" is a term used by the industry to rank siding as to its quality, i.e., streaking, knot holes, etc.[1] The record firmly establishes that the siding delivered to the plaintiff was not of a clear grade but was rather of an inferior grade; therefore, the contract has been breached. The plaintiff has a cause of action to rescind the contract based upon this error regardless of any cause of action sounding in redhibition because of the "defective" nature of the product. Accordingly plaintiff's cause of action is governed by a ten year prescriptive period. La.C.C. Art. 3544.[2]
Applicable to the situation at hand is La.C.C. Art. 1931. That Article provides:

*775 "A contract may be violated, either actively by doing something inconsistent with the obligation it has proposed or passively by not doing what was covenanted to be done, or not doing it at the time, or in the manner stipulated or implied from the nature of the contract."
It can be readily seen from the above Article that a contract may impose upon the parties thereto obligations to do. Further:
"Classifications of contracts have occasioned the courts some difficulty where the contract includes aspects of the obligation both to do and to give. Where they are inseparable, generally one of the obligations must be determined as fundamental and the rules thereunder will control. 7 S. Litvinoff, La. Civil Law Treatise: Obligations Book 2, Section 158 at page 291. However, where the object provided is not that which is contracted for, redhibition does not apply.
In Victory Oil Company, Inc. v. Perret, 183 So.2d 360 (La.App. 4th Cir.1966), writ refused, the court noted succinctly that an action in redhibition is based upon a vice or defect in the thing sold. LSA-C.C. Article 2520. There the object contracted for was a specific type of diesel oil, but the oil delivered was a different type unsuitable for use in the buyer's trucks. The court determined that an action based on the delivery and failure of the wrong commodity was not an action in redhibition, but one for breach of contract and the ten-year prescriptive period applies. In Vico Concrete Company, Inc. v. Antley, 283 So.2d 830 (La.App. 2nd Cir.1973), the court cited Victory and distinguished its own facts, which involved contaminated concrete, from the Victory facts involving a failure to provide the specific product under the contract. See also PPG Industries v. Industrial Laminates, 664 F.2d 1332 (5th Cir.1982)" (Footnote omitted.)

The People's Water Service Company of Louisiana v. Menge Pump & Machinery Company, Inc., et al., 452 So.2d 752 (La. App. 5th Cir.1984), writ denied, 456 So.2d 1391 (La.1984).
In the case at hand as well as in Victory and People's Water Service Company, the defendant breached his contract by failing to provide the product contracted for. He breached his obligation to do, that being his obligation to deliver siding of a specified quality by providing the plaintiff with siding of an inferior nature. The applicable prescriptive period for such a breach is ten years under La.C.C. Art. 3544 and thus plaintiff's claim is timely. Further the breach of this obligation to do renders the seller liable for damages under La.C.C. Art. 1926 and 1928. Those Articles provide:
"Art. 1926.
On the breach of any obligation to do, or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, or he may require the dissolution of the contract, and in all these cases damages may be given where they have accrued, according to the rules established in the following section."
"Art. 1928.
The obligee may require that any thing which has been done in violation of a contract, may be undone, if the nature of the cause will permit, and that things be restored to the situation in which they were before the act complained of was done, and the court may order this to be effected by its officers, or authorize the injured party to do it himself at the expense of the other, and may also add damages, if the justice of the case require it."
It is clear from Article 1928 that the seller should be liable to the extent necessary to restore things "to the situation in which they were before the act complained of was done." The damages due are, however, subject to certain codal restrictions, the amount of the loss sustained and the profit of which the party has been deprived. In general then, the measure of damages for breach of a contract is the sum that will place plaintiff in the same *776 position as if the obligation has been fulfilled. Harelson v. Parish of East Baton Rouge, 272 So.2d 382 (La.App. 1st Cir. 1972). The amount of damages must, however, be determined in relation to the contract and the circumstances which surround it. Jolley Elevator Company v. Schwegmann Brothers Giant Supermarkets, 230 So.2d 640 (La.App. 4th Cir.1970).
Under the above stated guidelines and having found that plaintiff has a legal right to recover, we hold damages should be fixed on the following basis: (1) Original purchase price of redwood siding from Howard Lumber Company, Inc.$2,611.39; (2) Labor incurred in removing the old siding$430.00; (3) Insulation damage suffered by removal of the old siding $470.40; (4) Cost of interim financing incurred due to inability to sell the home $2,058.84.
As to item of damages No. 4 we have reduced the trial court's figure from $5,024.55 to the above stated figure because we feel the trial court's award was excessive. The amount awarded by the trial court represents the interest paid by Harkins on his interim finance loan for a period from July 29, 1980, to February 18, 1981, a total of 205 days.
Although Harkins is entitled to the interest which he was required to pay on his interim finance loan, we feel he is entitled only to the interest for such period as the record reflects he was actually delayed by Howard's breach of contract. In this connection the record shows that the old siding was removed from the house on July 28, 1980. Harkins testified that prior to this he had negotiated with Howard without success for a period from 4 to 6 weeks. When the negotiations fell through, the siding was removed. He then testified that he immediately ordered siding from McNeal, but it was not received before 4 to 5 weeks. Harkins himself testified that, although the siding was not completely installed on the house until the first week in January, the siding could have been completely installed on the house in one week's time. The record reflects the reason for the delay in installing the new siding, and that being because, at the same time Harkins was constructing the home under consideration here, he had 10 or 11 other homes also under construction. The trial court allowed plaintiff interim financing for the period from the day after the siding was removed from the house to the date when the house was fully completed, a period of 205 days. As aforesaid we find this award to be excessive as the record makes clear that Harkins was not delayed for a period of 205 days. In our view, and viewing Harkins' own testimony in its most favorable light, Howard's breach of contract cannot be said to have delayed plaintiff longer than a period of 12 weeks, i.e., negotiations6 weeks; order and delivery of new siding5 weeks; and installation of new siding1 week. These collective periods amount to a total of 84 days. The record reflects that Harkins incurred interest on the interim financing for this house at a rate of $24.51 per day. Accordingly we shall reduce the trial court's award for interest on the interim financing from $5,024.55 to the sum of $2,058.84.
Further, the trial court awarded the plaintiff additional damages including the purchase price and installation cost of a new and higher grade of siding. We find those awards to be improper. As pointed out earlier the damage awarded for a breach of contract case should be only the amount that would place the plaintiff in the same position as if no breach had occurred. In this case before plaintiff bought the inferior siding he had a residential home with no siding on it. From our above award he has been restored to that status and has recovered any damages which were caused by that breach. To award the cost of the new siding and its installation cost would be to bestow that benefit upon him gratuitously. For if we were to affirm the award, the result would be that before the breach occurred the plaintiff possessed a home with no sidingafter the breach he would have a home with siding on it with the improvements having cost him nothing. We therefore limit plaintiff's recovery to *777 the above stated amounts. See Caubarreaux v. Hines, 442 So.2d 898 (La.App. 3rd Cir.1983), writ denied, 446 So.2d 1225 (La. 1984).
The only other item of damage which plaintiff might be entitled to recover, other than those specified above, would be the cost of installing the original siding. Our review of the record reflects no evidence on the specific dollar amount expended by plaintiff for this installation. The only evidence in regard thereto is the testimony of plaintiff and Jerry Doyle that it took approximately one week to put up the original siding. As to this item of damage, the record does not reflect with sufficient specificity the damages suffered in this regard, thus, plaintiff has failed in his burden of proof and must be denied damages for this item.
Lastly, we must reverse the trial court's judgment insofar as it granted Howard's third party demand against Port Barre. The evidence in the record is to the effect that Port Barre delivered to Howard clear redwood siding with 10 to 15 percent carmel developing. The expert testimony in the record supports our finding that the redwood siding ordered, shipped, and invoiced correctly describes, according to industry grading standards, the actual redwood delivered to Howard. If Howard represented to the plaintiff that the siding was clear redwood siding, when Port Barre identified it as clear with 10 to 15 percent carmel developing, Port Barre cannot be held liable for a misrepresentation as to quality made by Howard. For this reason we shall reverse the trial court's judgment in favor of Howard and against Port Barre and dismiss Howard's third party demand.
For the above and foregoing reasons the judgment of the trial court is affirmed in part and reversed in part and it is hereby Ordered, Adjudged and Decreed that there be judgment herein in favor of the plaintiff, Jerry Harkins d/b/a Harkins Construction, and against the defendant, Howard Lumber Company, Inc., in the sum of $5,570.70, with legal interest thereon from date of judicial demand until paid. The amount awarded is broken down as follows:
(1) Original purchase price of redwood siding from Howard Lumber Company $2,611.39.
(2) Labor incurred in removing the old siding$430.00.
(3) Insulation damage suffered by removal of the old siding$470.40.
(4) Cost of interim financing incurred due to inability to sell the home$2,058.84.
It is further Ordered, Adjudged and Decreed that the judgment of the trial court is reversed insofar as it granted judgment in favor of third party plaintiff, Howard Lumber Company, Inc., against the third party defendant, Port Barre Lumber Industries, Inc., and said third party claim is hereby dismissed.
It is further Ordered, Adjudged and Decreed that the exceptions of prescription filed in this Court on behalf of Howard Lumber Company, Inc. and Port Barre Lumber Industries, Inc. are expressly overruled.
All costs at trial and on appeal are assessed against appellant, Howard Lumber Company, Inc.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] Ralph Day, who was tendered and accepted by the Court as an expert witness for Port Barre Lumber Industries testified that the two top grades of redwood siding are "Clear" and "Clear All Heart". This conforms to the brochure tendered by the defendants. This Exhibit contains the following language:

"Two grades of redwood are usually used for siding. Clear All Heart is the finest redwood grade, ... and the face is free of knots. Clear grade redwood is similar to Clear All Heart except that the pieces may contain contrasting streaks of cream colored sapwood."
According to this, the only difference between Clear All Heart and Clear Redwood is that Clear includes varying amounts of sapwood but, otherwise is virtually the same as Clear All Heart.
The invoice from Howard Lumber Company shows that the redwood siding that was supposed to have been furnished the plaintiff was a clear grade. Mr. Day testified that the material the plaintiff purchased was a carmel grade or a B grade. It is apparent from the testimony and evidence presented that the material purchased by the plaintiff does not conform to the industries' specifications for clear redwood siding.
[2] Article 3499 replaces former Article 3544 of the Louisiana Civil Code of 1870. It does not change the law. See Acts 1983, No. 173, effective January 1, 1984, and official comments under the new Article 3499.