732 So.2d 815 (1999)
INSURANCE STORAGE POOL, INC. and Four P Investments, Inc.
v.
PARISH NATIONAL BANK.
No. 97 CA 2757.
Court of Appeal of Louisiana, First Circuit.
May 14, 1999.
*816 Lawrence R. Anderson, Jr., Seale, Smith, Zuber & Barnette, Baton Rouge, LA, for plaintiffs-appellants Insurance Storage Pool, Inc. and Four P Investments, Inc.
August J. Hand, Hand & Hand, Covington, LA, for defendant-appellee Parish National Bank.
BEFORE: LeBLANC, FOGG, and PARRO, JJ.
PARRO, J.
From a judgment sustaining defendant's exception raising the objection of prescription and dismissing the plaintiffs' action, the plaintiffs appeal. For the following reasons, this court affirms in part and remands.

Facts and Procedural History
The plaintiffs' petition reveals the following factual allegations. Insurance Storage Pool, Inc. (ISP) leased immovable property in Abita Springs, Louisiana, for the operation of its business of handling the storage and sale of damaged motor vehicles, primarily for insurance companies. ISP decided it would be more economically beneficial to relocate its business to another location in the Covington area by purchasing land and making improvements on it, which would better serve the *817 operation of its business and provide more land space. In conjunction with this decision, ISP's president and general manager inquired about a 6.957 acre tract of unimproved property owned by Parish National Bank (the Bank), which fronted on United States Highway 190, two miles west of Covington. Before offering to purchase the property, ISP's president conducted a physical inspection of the property and obtained a topographical map, soil survey, and vegetation study of the property, all of which indicated the property was suitable for commercial development. Furthermore, the Bank's realtor indicated that commercial buildings and other improvements could be placed on the property without the need for the placement of additional soil.
On February 22, 1990, ISP executed an agreement to purchase the property for $60,000. The agreement made no disclosures about the condition of the property. On June 27, 1990, ISP executed a private act of cash sale with full warranty, by which ISP purchased the property from the Bank for $60,000. Subsequently, as part of a business reorganization, the stockholders of ISP formed two new affiliate corporationsFour P Investments, Inc. (Four P) and Insurance Liquidators, Inc. (Liquidators). Four P acquired the immovable properties owned by ISP, while Liquidators took over ISP's business operations. By act of sale with assumption of mortgage, ISP sold the property it had purchased from the Bank to Four P on January 13, 1995. This sale was made allegedly without any warranty but with subrogation to all rights and actions of warranty against previous owners.
In 1996, as Four P was seeking to begin development of the property, it learned for the first time that the soil would have to be elevated to avoid drainage problems. Furthermore, after it had obtained various permits and approvals pertaining to construction, Four P received a letter from the United States Department of the Army, Corps of Engineers (Corps), dated July 2, 1996, which advised it that the Corps had determined the property to be a wetland, a water of the United States, subject to the regulatory authority of the Corps. The letter further advised that the work that was being performed on the property constituted a violation of the Clean Water Act and contained a cease and desist order directing that no further work be done at the site unless the Corps had granted proper authorization. Four P has since been unable to secure a permit authorizing construction from the Corps.
On April 7, 1997, ISP and Four P (plaintiffs) filed suit against the Bank seeking damages. The Bank responded by filing a peremptory exception raising the objection of prescription. The trial court sustained the exception of prescription, holding the petition was a suit for redhibition and not one for rescission based on error, and thus the suit was prescribed because it was filed more than one year after the sale of the property to ISP. Accordingly, the plaintiffs' suit was dismissed. From the judgment on the exception, ISP and Four P appeal and essentially contend the trial court erred in finding: (1) their petition was a suit in redhibition subject to a one-year prescriptive period, rather than a suit for rescission based on error in a sale subject to a 10-year prescriptive period, (2) their petition was a hodgepodge of the two theories of redhibition and rescission and in failing to hold its petition stated a cause of action for rescission based on error in the sale, (3) damages are not a permissible remedy in an action for rescission based on error in a sale and that their petition was otherwise defective in stating such a cause of action, and (4) their petition was prescribed on its face and that they failed to sustain their burden of proving that their claim was not prescribed.

Discussion
The allegations and prayer of the petition determine the true nature of the action and the applicable prescriptive period. United Gas Pipe Line Company v. Cargill, Inc., 612 So.2d 783, 785 (La.App. *818 1st Cir.1992); Arceneaux v. Courtney, 448 So.2d 197, 198 (La.App. 1st Cir.1984). In certain circumstances, the same acts or omissions may constitute a breach of both general duties and contractual duties and may give rise to both actions in tort and actions in contract. In such cases, the applicable prescriptive period is determined by the character which the plaintiff gives his pleadings and the form of his action. Federal Insurance Company v. Insurance Company of North America, 262 La. 509, 263 So.2d 871, 872 (1972); United Gas Pipe Line Company v. Cargill, Inc., 612 So.2d at 785-786. However, the rule that the allegations and the prayer of a petition govern the nature of the action asserted is not without limitation. The courts are not obligated to ascribe to an action the nature or character indicated by the prayer of the plaintiff's petition when the relief requested is unsupported by factual allegations in establishing the plaintiff's legal entitlement to the remedy sought. United Gas Pipe Line Company v. Cargill, Inc., 612 So.2d at 786.
In pertinent part, the plaintiffs' petition alleges the following:
17.
Plaintiffs are informed and believed, and therefore allege on the basis of such information and belief, that [the Bank] knew or should have known that the ... Property would require substantial fill work before commercial buildings and/or other improvements could be constructed on the ... Property and/or that the... Property was a wetland subject to the regulatory authority of the Corps at the time it sold the ... Property to ISP, but failed to disclose these facts to ISP prior to the Sale of the ... Property to ISP.
18.
ISP would have not purchased the ... Property from [the Bank] for the sum of $60,000 and would not have sold the ... Property ... to its affiliate corporation, Four P, and taken a note and mortgage for a substantial portion of the purchase price for that sale, if it had known prior to its purchase of the ... Property from [the Bank] that the ... Property would require substantial fill work before commercial buildings and/or other improvements could be constructed thereon and/or that the ... Property was a wetland subject to the regulatory authority of the Corps.
19.
Prior to the Sale of the ... Property from [the Bank], ISP was not aware that the ... Property would require substantial fill work in order to construct commercial buildings and/or other improvements thereon or that the Property is federally protected wetlands.
20.
Prior to and at the time of the Sale of the ... Property to ISP, [the Bank] was fully aware of the intended purpose of ISP to purchase the ... Property to construct commercial buildings and other improvements on the ... Property for relocating and operating its business thereon, particularly since ISP submitted its financial statements to [the Bank] for an enabling loan for the Sale.
21.
The foregoing constitutes an error of fact abrogating the consent of ISP to the Sale, the Collateral Mortgage Note, the Collateral Mortgage and any promissory note or notes evidencing the debt incurred under the Collateral Mortgage Note and Collateral Mortgage, as to the... Property.
22.
The above-described conditions of the... Property, which should have been disclosed by [the Bank] to ISP prior to the Sale of the ... Property, constitute redhibitory defects or vices, which, render the ... Property totally useless or *819 so diminish its usefulness or its value that it must be presumed that ISP would not have purchased the ... Property or would still have bought it, but for a much lesser price, which defects were not known to ISP at the time of the Sale and would not have been discovered by a reasonably prudent buyer.
23.
Plaintiffs do not seek rescission of the Sale of the ... Property by [the Bank] to ISP and seek rescission of the Collateral Mortgage Note, the Collateral Mortgage and any promissory note or notes evidencing the indebtedness under the Collateral Mortgage Note and the Collateral Mortgage only to the extent necessary to render a proper judgment in favor of plaintiffs for damages they have incurred and will incur as a result of the foregoing.
24.
Plaintiffs have incurred and will incur damages as a result of the foregoing and seek a judgment against [the Bank] for such damages, together with legal interest, for the following:
(a) reduction of the purchase price of the Sale of the ... Property from [the Bank] to ISP for diminution in value of the ... Property;
(b) costs and expenses of digging the pond and using the fill to build up the soil on the ... Property;
(c) any sums incurred and/or required to be paid in connection with proceedings by or with the Corps, including, without limitation, any sums paid in mitigation, permit application fees, notice or advertising costs, fines, penalties and/or damages;
(d) loss of lease payments to be paid by [Liquidators] after the anticipated date of completion of construction on the... Property; and
(e) reasonable attorney's fees and expenses incurred in filing and prosecuting this action.
In light of the factual background, the issues presented on appeal are: (1) whether the plaintiffs' petition alleges a cause of action based on the theory of redhibition or on the theory of rescission, or both, and (2) whether any such action or actions prescribed.

1. Redhibition

Redhibition is the avoidance of a sale because of some vice or defect in the thing sold. It requires the seller to return the purchase price and the buyer to return the thing purchased. Capitol City Leasing Corporation v. Hill, 404 So.2d 935, 939 (La.1981). Where return of the thing is impossible, the buyer has the option of simply suing for a reduction of the purchase price. See LSA-C.C. art. 2541;[1]Capitol City Leasing Corporation v. Hill, 404 So.2d at 939.
For purposes of this discussion, we will assume that the plaintiffs have asserted facts constituting a cause of action in redhibition. In their petition, the plaintiffs alleged bad faith on the part of the Bank. The plaintiffs argue that since their petition alleged bad faith, the applicable prescriptive period should begin to run from the date they discovered that the property was classified by the Corps as a wetland (July 2, 1996), rather than from the date of the sale to ISP (June 27, 1990), and therefore their claim in redhibition has not prescribed.
In general, a redhibitory action prescribes one year from the date of the sale, unless the seller had knowledge of the vice and neglected to declare it to the buyer. *820 LSA-C.C. art. 2534. If the seller had knowledge of the defect and failed to declare it, the one year period for filing the redhibitory action then runs from the date of discovery of the vice by the buyer. LSA-C.C. art. 2546; Harkins v. Howard Lumber Company, Inc., 460 So.2d 772, 774 (La.App. 3rd Cir.1984); Arceneaux v. Courtney, 448 So.2d at 198.
On a trial of the exception of prescription to an action in redhibition, the issue is whether a year passed between the sale and the filing of the action, and if a year had so passed, whether the seller knew of the alleged vice and failed to disclose that fact to the buyer, in which case an added issue is whether the buyer filed suit within a year following his discovery of the alleged vice. Gustin v. Shows, 377 So.2d 1325, 1328 (La.App. 1st Cir. 1979). The party pleading prescription has the burden of proof. However, where prescription has tolled on the face of the petition, the buyer bears the burden of showing the claim has not prescribed and, in this respect, if bad faith of the seller was alleged, the buyer must prove the seller was in bad faith before the rules of LSA-C.C. art. 2546 apply. Gustin v. Shows, 377 So.2d at 1328-1329.
In the present case, the property was first sold to ISP in 1990. The plaintiffs' petition was not filed until April 7, 1997. Therefore, under LSA-C.C. art. 2534, the defendant argues the plaintiffs' action in redhibition had prescribed on the face of the petition.[2] However, in the instant case, the plaintiffs have alleged that the sellers were in bad faith and that no alleged vice or defect was discovered by them until July 2, 1996; thus, they submit that their April 7, 1997 suit was timely. In light of this allegation, the plaintiffs argue that prescription had not tolled on the face of the petition and the Bank, as the exceptor, had the burden of proving the claim had prescribed, i.e., the Bank was not in bad faith or the plaintiffs had discovered the alleged vice or defect more than one year prior to filing suit. This argument was found meritless by this court in Gustin v. Shows, 377 So.2d 1325.
According to the holding of Gustin v. Shows, ISP and Four P's action has prescribed on the face of their petition because a year passed between the sale to ISP and the filing of the action. Therefore, the plaintiffs had the burden of proving the Bank was in bad faith before the rules of LSA-C.C. art. 2546 apply. See Gustin v. Shows, 377 So.2d at 1329; see also Rosenzweig v. Alexandria Seed Company, Inc., 426 So.2d 380, 383 (La.App. 2nd Cir.), writ denied, 432 So.2d 269 (La. 1983). The plaintiffs cannot sit back and rely on the allegations of their petition, but must set forth evidence on the trial of the exception showing that the Bank was in bad faith. See LSA-C.C.P. art. 931; Dolese v. Harvey, 94-1763 (La.App. 4th Cir.1/19/95), 649 So.2d 100, 102, writ denied, 95-0702 (La.4/28/95), 653 So.2d 597. The record contains no such proof. By failing to introduce any evidence on the issue of bad faith at the trial of the exception, the plaintiffs failed to prove the applicability of the discovery provision in LSA-C.C. art. 2546. Thus, LSA-C.C. art. 2534 applies, and the plaintiffs' action in redhibition prescribed in 1991. Accordingly, the trial court did not err in maintaining the Bank's exception of prescription with respect to any action in redhibition which the plaintiffs may have had.

2. Rescission

The plaintiffs argue the trial court erred in failing to recognize that their petition states a cause of action for rescission based on an error of fact in a sale, which *821 action they suggest would be subject to a ten-year prescriptive period.
LSA-C.C.P. art. 862 states:
Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.
Furthermore, every pleading shall be so construed as to do substantial justice. LSA-C.C.P. art. 865. Recovery may be granted under any legal theory justified by the facts pled in the petition. Succession of Stevenson, 492 So.2d 100, 101 (La.App. 1st Cir.), writ denied, 494 So.2d 1178 (La. 1986). Thus, after review of the pleadings, we find that the plaintiffs' petition, with its allegations and prayer for relief, sufficiently states a cause of action for relief under the theory of rescission.
A valid obligation requires, among other factors, consent. LSA-C.C. art.1927. Consent may be vitiated by error. LSA-C.C. art.1948. For an error to invalidate a contract, it must concern a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. LSA-C.C. art.1949. Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation. LSA-C.C. art.1950. In such a case of error, the consent necessary to confect a valid agreement would be lacking, thus giving rise to a cause of action to rescind the agreement as contemplated by LSA-C.C. art.1952.[3]See Dawley v. Sinclair, 419 So.2d 534, 535 (La.App. 5th Cir.1982); Louviere v. Meteye, 260 So.2d 377, 379 (La.App. 4th Cir.1972).
Rescission serves to put the parties in the same position as if there were no contract.[4]Twin City Pontiac, Inc. v. Pickett, 588 So.2d 1125, 1129 (La.App. 2nd Cir.1991). However, the remedy prayed for by the plaintiffs is not that of rescission. Instead, they seek damages as specified in paragraph 24 of their petition. Thus, we must determine if they have stated a cause of action for damages under the theory of rescission in accordance with LSA-C.C. art.1952.
LSA-C.C. art.1952 provides:
A party who obtains rescission on grounds of his own error is liable for the loss thereby sustained by the other party unless the latter knew or should have known of the error.
The court may refuse rescission when the effective protection of the other party's interest requires that the contract be upheld. In that case, a reasonable compensation for the loss he has sustained may be granted to the party to whom rescission is refused.
A fair reading of LSA-C.C. art.1952 indicates that only the party in error may bring an action for rescission of a contract. If the party in error meets his burden of proof, rescission may be refused by the trial court only when the effective protection of the interest of the party not in error is required. Therefore, discretion to grant or refuse rescission rests solely with the trial court. But if rescission is refused, a reasonable compensation for any loss sustained by the party in error may be granted.
In this case, the petition specifically states that the plaintiffs do not seek rescission of the sale but seek damages. Since only the trial court has the discretion *822 to make this determination, we will ignore the plaintiffs' petition in this regard in our consideration of the peremptory exception of prescription. However, in deciding whether they have stated a cause of action for damages under the theory of rescission, we note that the plaintiffs have not alleged any facts showing the effective protection of the interest of the Bank (the party not in error) is required. Therefore, we notice on our own motion that the plaintiffs have failed to state a cause of action for damages under the theory of rescission. See LSA-C.C.P. art. 927(B).
Nonetheless, when the grounds of the objection raised by the peremptory exception may be removed by amendment of the petition, the party whose action is thereby dismissed must be given an opportunity to amend the petition. If the grounds of the objection cannot be so removed, or if the plaintiff fails to comply with an order to amend, the action shall be dismissed. LSA-C.C.P. art. 934.

Decree
For the foregoing reasons, the judgment maintaining the Bank's peremptory exception of prescription as it relates to a cause of action under the theory of redhibition is affirmed. However, this matter is remanded to the trial court to afford the plaintiffs a reasonable opportunity to amend their petition within the delay allowed by the court, and, if possible, to cure the defect in question. The parties shall be responsible for their respective costs of this appeal.
AFFIRMED IN PART AND REMANDED.
NOTES
[1] The civil code articles on redhibition, LSA-C.C. art. 2520 et seq., were amended by 1993 La. Acts No. 841, § 1, effective January 1, 1995. Since the effective date of the 1993 revisions to the redhibition articles is subsequent to the date of the sale to ISP, the pre-revision articles apply to the facts of this case. Accordingly, all references to such articles in this opinion will be to those articles as they existed prior to the 1993 revisions.
[2] See Arceneaux v. Courtney, 448 So.2d at 198 (where the plaintiffs/buyers did not allege bad faith on the part of the sellers, this court noted that more than one year elapsed between the date of purchase of the house and the date suit was filed, and concluded that, on the fact of the petition, the claim for redhibition had prescribed).
[3] An action to annul a relatively null contract must be brought within five years from the time the ground for nullity was discovered, as in the case of error. LSA-C.C. art.2032.
[4] We pretermit the issue of whether ISP or Four P has a right of action to bring an action for rescission under the facts of this case.