SUSAN M. CHEHARDY, Judge.
12This is a suit in redhibition or for quan-ti minoris arising out of the plaintiffs purchase of a house from the defendant. The trial court found the plaintiff entitled to a reduction of $40,000.00 in the purchase price. We reverse and render, finding the *398 plaintiff failed to prove her claim had not prescribed.
FACTS
On July 30, 1999 Diane Guedry purchased 4809 Folse Drive in Metairie, Jefferson Parish, from Josie Vitenas for $490,000.00. The act of cash sale included an “as is” clause, also known as a waiver of redhibition.
On January 30, 2007 — seven-and-one-half years after purchasing the property— Guedry filed suit against Vitenas in redhi-bition and/or for quanti minoris. Guedry alleged that on or about June 21, 2006, she discovered “hidden and latent defects” that included “leaking plumbing pipes which caused damage to the sub floor of the master bathroom and flooding which caused damage to the walls, framing, and floors.” The plaintiff alleged that Vitenas knew about these defects, but never disclosed them to Guedry prior to the time of sale and that “said conditions were covered up, hidden and intentionally kept from the plaintiff.”
The plaintiff further alleged the condition was not discoverable without difficulty, inconvenience, or skill. Specifically, the plaintiff alleged that when the |3wall and ceiling finishes were removed for repairs, she discovered handwriting on the underlying covering of certain walls that stated, “northwest corner of play room full of water, water at the return duct between intercom and TV, kitchen powder room and hall, bar at the door.” She alleged further that at another location she discovered an arrow pointing up with the words, “to flood.”
Guedry asserted that the “hidden conditions” in the home constitute an exception to the “as is” language “because evidence found within the walls confirms that the conditions were known and hidden and not disclosed in the property disclosure statements, as they should have been.” The plaintiff alleged the seller had actual or constructive knowledge of the conditions or, alternatively, intentionally concealed the information from the purchaser and, as such, those actions of the defendant constituted a false inducement of the contract, which cannot be waived.”
The plaintiff stated she had employed an engineer to inspect the home, but “the damage had been covered up, hidden and concealed and thus could not be determined.” The hidden defects could be discovered only by taking the wall and ceilings apart. The plaintiff stated that had she known of these hidden defects, she would not have purchased the property.
She further alleged the defendant seller was in bad faith at the time of the sale, and because of the bad faith the plaintiff sought return of the purchase price; all costs incurred in connection with the sale, with moving into and out of the premises, and in preserving the premises; general damages; loss of cost of capital; attorney’s fees; and “all other damages for which recovery is permitted against the bad faith seller.” Alternatively, the plaintiff sought damages for diminution in value, plus general damages, attorney’s fees, and all related damages recoverable under the facts and circumstances.
|4The defendant, Josie Vitenas, responded with exceptions of no cause of action and prescription/peremption, which the trial court denied. Thereafter the defendant filed an answer, in which she admitted that the act of sale included an “as is” clause and that the plaintiff had the property inspected prior to its purchase, but denied liability. She raised as affirmative defenses her claims of no cause of action and prescription or peremption.
In February 2008, a judgment of full interdiction was entered against Josie Sea- *399 vona Vitenas, in which Ms. Vitenas’ son, Michael Vitenas, was appointed her curator. In re Interdiction of Vitenas, 2006-4066 (Civ. Distr. Ct., Orleans 2/15/2008). Thereafter counsel for the defendant filed a motion to substitute Michael Vitenas, as curator for Josie S. Vitenas, as party defendant in this matter.
The matter proceeded to trial on March 13, 2008. Due to Mrs. Vitenas’ interdiction and her underlying condition, she could not testify at trial.
On April 29, 2008 the court rendered judgment in favor of the plaintiff and against the defendant, granting a reduction of purchase price in the amount of $40,000.00, with legal interest from date of judicial demand until paid. The court did not issue reasons for judgment.
The defendant appealed and the plaintiff answered the appeal.
On appeal the defendant assigns as error the trial court’s denial of the exception of prescription, the court’s admission in evidence of the writing on the wall, the court’s failure to enforce the waiver-of-redhibition clause, the damages award, and the assessment of costs for expert fees. The defendant urges this Court to review the.case de novo and to find that the wall writings were inadmissible evidence, that the plaintiff failed to prove fraud, and that the plaintiffs claims are prescribed, resulting in reversal of the district court’s judgment and dismissal of all claims with prejudice. Alternatively, the defendant asks us to reduce the judgment |Bin accordance with the evidence submitted at trial and to limit the expert fees of expert Leonard Quick to $1,250.00.
In her answer to the appeal, the plaintiff contends the trial court should have granted her rescission of the sale plus all related damages as a result of the defendant’s bad faith, including but not limited to all costs of the sale, all costs incurred in maintaining the property, all general damages, all special damages and in addition thereto, attorneys’ fees, court costs and interest under the laws pursuant to those applicable to a bad faith seller.
LAW AND ANALYSIS
A seller warrants to the buyer the absence of hidden defects in the thing sold, and also warrants that the thing sold is fit for its intended use. La.C.C. art. 2475.
Redhibition is the right of a buyer to obtain rescission of the sale when the thing sold has defects that render it useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. La.C.C. art. 2520. Alternatively, the buyer may be limited to a reduction of the purchase price when the defect does not render the thing totally useless, but diminishes its usefulness or value so that it must be presumed a buyer would still have bought it but for a lesser price. Id. In Louisiana jurisprudence, the reduction of the purchase price is referred to as quanti minoris.
The seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things. La. C.C. art. 2521.
A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those lfiincurred for the *400 preservation of the thing, and also for damages and reasonable attorney fees.
La.C.C. art. 2545.
Prescription
The defendant-appellant asserts the district court erred when it allowed the plaintiff to maintain her prescribed redhi-bition lawsuit filed seven and a half years after the Act of Sale.
In a redhibition action for residential immovable property against a seller who did not know of the defect, prescription is one year from the day delivery of the property was made to the buyer. La.C.C. art. 2534(A)(2). Where the seller knew, or is presumed to have known, of the defect, prescription of the action for redhibition is one year from the day the defect was discovered by the buyer. La.C.C. art. 2534(B).
The allegations and prayer of the petition determine the true nature of the action and the applicable prescriptive period. Insurance Storage Pool, Inc. v. Parish Nat. Bank, 1997-2757, p. 4 (La.App. 1 Cir. 5/14/99), 732 So.2d 815, 817.
Hence, on trial of the exception of prescription to an action in redhibition, the issue is whether a year passed between the sale and the filing of the action, and if a year had so passed, whether the seller knew of the alleged vice and failed to disclose that fact to the buyer, in which case an added issue is whether the buyer filed suit within a year following his discovery of the alleged vice. Gustin v. Shows, 377 So.2d 1325, 1328 (La.App. 1 Cir.1979). The party pleading prescription has the burden of proof. Id.
Where prescription has tolled on the face of the petition, however, the buyer bears the burden of showing the claim has not prescribed and, in this respect, if bad faith of the seller was alleged, the buyer must prove the seller was in bad faith for |7La.C.C. art. 2534(B) to apply. Gustin v. Shows, 377 So.2d at 1328-1329. The plaintiffs cannot sit back and rely on the allegations of their petition, but must set forth evidence on the trial of the exception showing that the defendant was in bad faith. Insurance Storage Pool, Inc. v. Parish Nat. Bank, 1997-2757 at p. 8, 732 So.2d at 820.
Thus, the burden of proof at trial of the exception of prescription lay with the plaintiff, whose petition was prescribed on its face, to prove fraud on the part of the seller that would provide an exception to the one-year-from-date-of-sale prescriptive period of La.C.C. art. 2534(A)(2). In this case, the petition was filed within one year after the plaintiff discovered the defects. The petition alleged the defendant knew about the defects, but never disclosed them, but instead covered up and intentionally kept the conditions from the plaintiff. At trial of the exception, neither party presented evidence, but simply argument by counsel.
By failing to introduce any evidence on the issue of bad faith at the trial of the exception, the plaintiffs failed to prove the applicability of the discovery provision in Article 2534(B). Accordingly, the trial court erred in denying the exception of prescription. The exception should have been granted and the suit dismissed.
Alternatively, considering that the parties introduced evidence at trial on the merits, we address whether the evidence sufficiently established bad faith on the part of the seller, Mrs. Vitenas, to make Article 2534(B) apply.
The plaintiff, Diane Guedry, testified that when she had a contractor working on the house in 2006 to repair water damage and mold infestations from Hurricane Katrina, the contractor discovered there was *401 preexisting damage inside the walls of the den and in the ceiling over it, which was directly under the floor of the master bathroom upstairs.
|sThe contractor who did the work, Ray Chatagnier, testified that he had to remove sheetrock in the room underneath the master bathroom. When he took out the sheetrock, he discovered the shower floor was rotten. He also found sheetrock underneath that which he had removed, on which there were handwritten notations that indicated the house had previously flooded in several rooms. He also saw water stains five to six inches high on the wall studs. The sheetrock with writing on it was admitted in evidence as Exh. P-13. The handwritten notations stated: “This corner, northwest, near play room full of water, shower full of water, water at the return duct, wet with T.V., kitchen, powder room and hall, bar at the door.” Chatagnier said the rooms mentioned in the notations are the same ones in which he saw water stains on the studs.
Chatagnier testified further that the subfloor of the master bathroom was made of three-quarter-inch plywood that was rotten, to the point that as his workers tore out the floor tile to start work, their feet went through it and fell through the ceiling of the room below. He had to tear up the floor to get to the subfloor and rotten spots. He discovered the shower floor pan was sitting directly on top of the joists with no subfloor beneath it, and no support in between the joists.
An expert forensic engineer, Leonard Quick, testified that the damage in the joists was due to long-term leakage of water, and that the water marks on the studs of the downstairs rooms indicated there had been water six to eight inches high.
The plaintiff also introduced the testimony of Lance Arnold, an attorney who formerly represented the defendants in this matter. Arnold was questioned regarding a January 2007 letter he sent to plaintiffs counsel during pretrial negotiations, in which Arnold stated, “I have reviewed the photos including the handwritten notations with my client. I am informed that the handwriting that has been discovered was in fact the elder Mr. Vitenas’ handwriting. He died in 1991:” | ¡Arnold did not testify who “informed” him, because the trial judge sustained the defense’s objections that such communication was subject to the attorney-client privilege.
Michael Vitenas, as curator for the interdicted defendant, testified for the defense. He is also the son of the defendant. He testified that his mother is permanently interdicted due to dementia. He said she is frequently delusional and has hallucinations, and her condition began in approximately 2002 or 2003. Prior to the onset of the dementia, his mother had communication problems because she is deaf.
Vitenas said the house on Folse Drive was built for his family around 1971, and that both his late father and his mother were very involved in the construction process. His father died in 1991. He testified that the home had never flooded: he was never told about a flood, he never witnessed a flood, he had no knowledge of a flood, and could “emphatically state” that the home never flooded.
Vitenas said he moved out on his own in 1983, but used to visit once a week until his father died, after which he began visiting his mother three to four times a week. He denied any knowledge of the stains on the wall studs or of the wall writing, prior to being notified of the plaintiffs claims that led to this lawsuit. His mother never mentioned anything about it and, as far as he knew, his mother knew nothing about it.
*402 He recalled that plumbing work was done in 1992 or 1993, about a year and a half after his father’s death. His mother told him the shower was leaking, and she had a plumber in to repair it within two or three weeks. He recalled seeing some stained sheetrock on the ceiling of the room beneath the bathroom. The sheet-rock was repaired at the same time. His mother continued using that bathroom for eight more years, until the house was sold, and never mentioned any |infurther problems with it. Due to his mother’s handicap, he regularly walked around the house looking for problems and he never noticed anything.
Vitenas testified he could not say for certain whose handwriting was on the sheetrock; he said it could have been his father’s or it could have been anyone’s.
Although the trial judge did not give any reasons for judgment, inherent in his determination that the defendant was liable is a conclusion that the defendant knew of the hidden damage to the house, but failed to disclose it. We find that determination was clearly wrong, however; the evidence and testimony simply failed to establish by a preponderance of the evidence that Josie Vitenas, the seller of the home, either knew of the hidden damage to the house or that she deliberately failed to disclose it to the plaintiff. Accordingly, the plaintiff failed to establish bad faith or fraud on the part of the defendant.
Our determination on the prescription issue makes it unnecessary to address the other issues raised by the defendants on appeal, or by the plaintiff in her answer to the appeal.
DECREE
For the foregoing reasons, the judgment is reversed and judgment hereby is rendered in favor of the defendant, Michael Vitenas, in his capacity as curator of the interdict, Josie Scavona Vitenas, and against the plaintiff, Diane Guedry. Costs are assessed against the plaintiff.

REVERSED AND RENDERED.