GUIDRY, Judge.
In this suit plaintiff, Central Industries, Inc., hereafter Central, sought judgment against defendants, Acadiana Reserves, Inc., hereafter Acadiana, and Tabeo Exploration Company, hereafter Tabeo, in the *1242 sum of $40,000.00 plus judicial interest and 10% attorney’s fees. As a basis for recovery of the amount sued for, Central alleged that on May 8, 1980, it completed construction of a board road and turnaround with respect to the drilling of an oil well in Jefferson Davis Parish at the request of Tabeo and/or Acadiana for an agreed price of $40,000.00. Central alleged non-payment despite amicable demand. Acadiana and Tabeo filed answers generally denying the allegations of plaintiff’s petition. During the course of trial, Central moved for and was granted a dismissal, without prejudice, of its claim against Acadiana and the matter proceeded with respect to the claim of Central against Tabeo. The trial court rendered judgment in favor of Central and against Tabeo for the sum of $40,000.00 with legal interest from date of judicial demand and for 10% of such amount as attorney’s fees. Tabeo appealed suspen-sively from that judgment.
The single issue for resolution on appeal is whether the trial court erred in holding Tabeo, rather than an alleged joint venture between Tabeo and Acadiana, responsible for the unpaid obligation.
The record reflects no genuine dispute with regard to any facts material to a resolution of the issue presented for decision.
By an agreement dated April 30, 1979, Tabeo and Acadiana entered into a joint venture for development of leases in the China Field, Jefferson Davis Parish, Louisiana. At all times pertinent to this litigation, Thomas A. Blankenship was the president and chief executive officer of Tabeo and Lee Matherne was the chief executive officer of Acadiana. David Dugas, during the early part of 1980, was employed as an Engineer by Tabeo, his employment with Tabeo having terminated on May 6, 1980.
Sometime during the latter part of April, 1980, Dugas upon specific instructions from Blankenship, in his capacity as president of Tabeo, arranged with Central for the construction of a board road and turnaround at a location in the South China Field for an agreed price of $40,000.00. It is not disputed that all negotiations by Dugas with Central were conducted with the authorization of Blankenship and that Central understood that the job was for Tabeo. Both Dugas and Blankenship candidly testified that neither advised Central that the contracted work was to be done for the account of the joint venture between Acadiana and Tabeo. In this regard, Dugas testified as follows:
“Q. All right. Did you ever tell anyone with Central Industries that the board road and location which they were going to construct — Let me rephrase the question. Prior to the time that Central Industries finished the construction of the board road and the location for the Tietje Number One well, did you ever tell anybody with Central Industries that work that they were doing was to be done for the account of Acadiana Reserves or for the account of any joint venture between Tabeo and Acadiana Reserves?

A. No, sir.

Q. Did you know yourself what that arrangement was?

A. Not in particular.”

and Mr. Blankenship testified as follows:

“Q. All right. Now, is it correct then, Mr. Blankenship, that Tabeo did in fact contract with Central Industries for work to be performed for the location that was proposed for the Teitje well?

A. Yes.

Q. Now, I understand that you contend that this was done in whole or in part because of the relationship that you had with Acadiana Reserves; correct?

A. That’s correct. A joint venture.

Q. All right. Do you recall whether you told anyone at Central Industries that the work was being done either for Acadiana Reserves or for some joint venture between Tabeo and Acadiana Reserves?

A. No, I do not, but it was public knowledge that we had a joint venture between Acadiana and Tabeo.”

[1]

*1243 The board road and turnaround was completed by Central on May 8, 1980. James McLaurin, the employee who represented Central in all negotiations with Dugas and Blankenship, testified that he always understood that the job in question was contracted solely with Tabeo and was not advised of Acadiana’s alleged involvement until after the job had been completed and an attempt was made to collect the unpaid contract price.
In rendering judgment against Tabeo the trial court stated:
“This piece of work was contracted by Tabeo as Mr. Blankenship very candidly and honestly testified. On Tabco’s stationary they solicited bids. On Mr. Blankenship’s instructions to Mr. Dugas, the bid was accepted. On further confirmation, Mr. Blankenship brought the location plat so they would know where to put the board road and the turnaround and the rig setup. Mr. Blankenship also states that he never told Central, or he doesn’t recall ever telling Central that this was a joint venture between Tabeo and Acadiana. Mr. Dugas testified that he never told Central that this was a joint venture. There’s some dispute as to how much he knew or didn’t know. He states that he knew there was a relationship but the basis, he didn’t know what it was. Mr. Blankenship testified that he had access to all of the records and was party to some of the conversations; he knew everything. But be that as it may, in order for Mr. Blankenship or Tabeo to extricate itself in this contract is to show that Central was aware that Tabeo was simply an agent for a joint venture between Tabeo and Acadiana; and that has not been shown by anyone....”
On appeal, Tabeo asserts error in the trial court’s “applying the law of agency-principal, rather than partnership law to the facts” in its rendition of judgment solely against Tabeo. We find no merit in this contention.
In this case, we are not concerned with the rights inter se Tabeo and Acadiana but only with Central’s right to recovery of judgment for the full amount against Tab-eo. As to this latter, we find no error in the trial court’s conclusion that Central is entitled to judgment.
It is well settled that if an agent acting on behalf of a principal wishes to avoid personal liability, the agent must disclose his status as such and identify his principal. Also well established is the principle that one asserting an agency relationship bears the burden of proving disclosure. Olympic Electric Service, Inc. v. Craig, 286 So.2d 182 (La.App.4th Cir.1973); R.H.S. (Racing Head Service) v. Fallon, 395 So.2d 940 (La.App.2nd Cir.1981), writ refused, 399 So.2d 609 (La.1981). These principles are clearly applicable under the facts disclosed by the record on appeal.
For the foregoing reasons the judgment appealed from is affirmed. Tabeo is cast for all costs of this appeal.
AFFIRMED.

. Contrary to Mr. Blankenship’s testimony, the record does not support a conclusion that the joint venture between Tabeo and Acadiana was a matter of public knowledge.