524 So.2d 80 (1988)
M. Robert VOITIER, Sr., Plaintiff-Appellee,
v.
ANTIQUE ART GALLERY, et al., Defendants-Appellants.
No. 87-216.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1988.
Rehearing Denied May 5, 1988.
*81 Lemonick, Seemann & Willis, Patrick F. Willis, Opelousas, for plaintiff-appellee.
Privat & Regan, Kenneth O. Privat and John F. Craton, Crowley, for defendants-appellants.
Before GUIDRY, DOUCET and KNOLL, JJ.
GUIDRY, Judge.
On May 15, 1984, plaintiff, M. Robert Voitier, Sr., filed this suit seeking rescission of a contract of sale of a painting entitled "Wooded Farmland Glade", supposedly an original work of art by George Inness. Voitier purchased the painting, which was owned by Fred Rotondaro, on June 26, 1982 at an auction sale conducted by Morton's Auction Exchange, Inc., in New Orleans, Louisiana. Plaintiff seeks a rescission of the sale and a return of the sale price because of an error of fact which he alleges was the principal cause for making the contract, i.e., the painting is not an original work of art by George Inness. Plaintiff, in addition, sought the recovery of attendant damages.
Named as original defendants in this suit were David Harrison, d/b/a Antique Art Gallery, Fred Rotondaro, and Morton Goldberg, d/b/a Morton's Auction Exchange. Both Harrison and Rotondaro are nonresidents of the State of Louisiana being domiciled in Potomac, Maryland. Goldberg is domiciled in Orleans Parish, Louisiana. Following institution of suit, Antique Art Gallery, Inc., a Maryland Corporation, and Morton's Auction Exchange, Inc., a Louisiana corporation, were also made defendants. Goldberg filed an answer generally denying the allegations of plaintiff's petition. Goldberg, although denying any personal responsibility, admitted that Morton's Auction Exchange, Inc. had in fact made the sale of the painting to plaintiff. Harrison, Antique Art Galleries, Inc. and Rotondaro excepted to the jurisdiction of the court on the basis of their nonresidency. After a hearing, the trial court overruled the exceptions to jurisdiction filed by these defendants. Those defendants also filed exceptions of prescription and no right and no cause of action which were referred to the merits. Harrison, Antique and Rotondaro filed answers generally denying the allegations of plaintiff's pleadings.
After a trial on the merits, the trial court overruled the exceptions of prescription and no right and no cause of action and made the following findings:
1. The painting owned by Rotondaro which was sold to Voitier was not an original George Inness.
2. Morton Goldberg had no individual responsibility in the matter as the sale was confected on behalf of Rotondaro by Morton's Auction Exchange, Inc.
3. Morton's Auction Exchange, Inc., although the undisclosed agent of Rotondaro, is not amenable to judgment because of bankruptcy proceedings pending in the U.S. Bankruptcy Court for the Eastern District of Louisiana.
4. Harrison was the undisclosed agent of Rotondaro.
5. There was no valid and effective disclaimer of warranty.
Pursuant to these findings, the trial court rendered judgment in favor of plaintiff and against Harrison and Rotondaro, in solido, for the sum of $23,610.93, which included a return of the purchase price of $17,500.00 and all damages sustained by the purchaser, Voitier. Rotondaro was decreed entitled to a return of the painting contingent upon payment of the judgment in full.[1] Harrison and Rotondaro appealed.

FACTS
In early 1982, Fred Rotondaro, a resident of the state of Maryland, purchased the painting at issue, which was reputed to be an original George Inness work of art from David Harrison, d/b/a Antique Art Gallery. *82 Prior to the purchase, Rotondaro had the painting authenticated and was satisfied that it was an original George Inness painting. Shortly thereafter, Rotondaro consigned the painting back to Harrison in the hope of turning a profit on a resale.
During the late spring of 1982, Robert Dishmond, the head of the art department for Morton's Auction Exchange, Inc., placed an advertisement in the Washington Post indicating that a Morton's representative would be in the area looking for paintings to sell in New Orleans, Louisiana. Harrison contacted Dishmond. At Harrison's invitation, Dishmond went to the Antique Art Gallery and selected several paintings, including the alleged George Inness original, for shipment to New Orleans. Thereafter, Harrison shipped the selected paintings to Morton's Auction Exchange, Inc. in New Orleans. Rotondaro was aware of these arrangements.
On June 26, 1982, an auction was held at Morton's Auction Exchange, Inc. At the auction, M. Robert Voitier, Sr. was the successful bidder on the painting at issue which was alleged to be an original work of art by the early American artist, George Inness. The bid price was $17,500.00. Voitier had seen the painting prior to the auction and on the day of sale made his bid telephonically. In addition to the purchase price, Voitier paid a 10% hammer fee, $1,750.00, and 3% sales tax. He was also required to pay freight and insurance fees to transport the painting to his residence. Upon delivery to his residence, Voitier noticed the absence of the letter of authenticity which he had been assured would accompany the painting. He immediately contacted Morton's Auction Exchange, Inc. and was eventually sent a letter of authenticity written by a Rosalyn Mikesell, owner/director of the Webberly Galleries in Chicago, Illinois. Voitier was not satisfied with Mikesell's letter of authenticity and engaged the services of Nicolai Cikovsky, an expert on the works of George Inness. Cikovsky, after studying the painting, rendered a written opinion to Voitier stating that the painting was not a George Inness original. Following this discovery, Voitier contacted Goldberg and attempted to return the painting for the amount paid. Goldberg made efforts to recover the purchase price from Rotondaro, the owner, and Harrison, the agent, who had cosigned the painting to him in New Orleans. Correspondence and demands went back and forth to no avail. Voitier then instituted this suit.
On appeal, defendants, Harrison and Rotondaro, urge the following as error:
1. The trial court erred in overruling their exceptions to jurisdiction.
2. The trial court erred in overruling their exceptions of prescription.
3. The trial court erred in finding a cause of action against defendants, Rotondaro and Harrison.
4. The trial court erred in finding that the sale was a sale with warranty.
5. The trial court erred in awarding damages pursuant to La.C.C. art. 1934(3) (now La.C.C. arts. 1995, 1996, 1998 and 1999).

JURISDICTION
The trial court correctly concluded that it had jurisdiction over Harrison and Rotondaro under Louisiana's long-arm statute, La.R.S. 13:3201, which provides in pertinent part as follows:
"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
. . . . .
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States."
Subsection B was added to Section 3201 by Act 418 of 1987, effective September 1, 1987, and was designed to extend Louisiana's long-arm jurisdiction to the limits allowed by due process. Subsection A was left intact and provides a valuable list of *83 specific examples of contacts sufficient to give rise to in personam jurisdiction. Act 418 of 1987, a procedural statute, operates retroactively in the absence of clear legislative intent to the contrary. First Guaranty Bank of Hammond v. Attorneys Liability Assurance Society, Ltd., et al., 515 So.2d 1080 (La.1987); Petroleum Helicopters, Inc. v. Avco Corporation, et al., 513 So.2d 1188 (La.1987). As stated in Petroleum Helicopters, supra, "... under the express wording of the present Louisiana Long-Arm Statute, the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements."
In the instant case, Rotondaro, through his agent, Harrison, sent the painting to Morton's for the specific purpose of having it sold at auction in Louisiana. The painting was sold in New Orleans to Voitier, a Louisiana resident, and the funds derived from that sale were transmitted from Louisiana to Harrison and, ultimately, to Rotondaro. The cause of action instituted by plaintiff arises directly from the transaction of this business in Louisiana by Rotondaro through his agents, Harrison and Morton's. Under these circumstances, it is clear that Louisiana has personal jurisdiction over Harrison and Rotondaro insofar as concerns the cause of action asserted in this suit and the exercise of such jurisdiction comports with the due process requirements of the United States Constitution and Louisiana's constitution.

PRESCRIPTION
Appellants contend that this is a redhibitory action and since there has been no showing of bad faith on their part, plaintiff's cause of action prescribed one year after the sale, i.e., June 26, 1983 (La.C.C. art. 2534). We find no merit in this contention.
A perusal of plaintiff's pleadings reflects that this is not a suit in redhibition but rather one for rescission of sale on the ground of error as to a fact which was the principal cause of the contract (La.C.C. arts. 1949-1950, former arts. 1823-1846). At the time of the sale in question, our Civil Code allowed a period of 10 years within which to institute a suit for rescission of a contract on the ground of error. Former La.C.C. art. 2221.[2]
Since the applicable prescriptive period is ten years, plaintiff's cause of action had not prescribed at the time this suit was instituted. See Harkins v. Howard Lumber Company, Inc., 460 So.2d 772 (La.App. 3rd Cir.1984).

SUFFICIENT CAUSE FOR RESCISSION OF SALE AND WAIVER OF WARRANTY
The trial court determined that the painting in question was not an original George Inness work of art. Appellants do not seriously question this fact determination. They contend that this fact determination will not support a cause of action for rescission on the ground of error. In the alternative, appellants urge that the sale to Voitier was made without warranty. We find merit in neither of these contentions.
Our brethren of the Fourth Circuit in Deutschmann v. Standard Fur Company, Inc., 331 So.2d 219 (La.App.1976), succinctly stated the law regarding the invalidation of contracts for unilateral error as follows:
"Our jurisprudence is well settled that a contract may be invalidated for a unilateral error as to a fact which was the principal cause for making the contract, where the other party knew or should have known it was the principal cause. LSA-C.C. art. 1845; Savoie v. Bills, 317 So.2d 249 (La.App. 3d Cir.1975); West Esplanade Shell Service, Inc. v. Breithoff 293 So.2d 595 (La.App. 4th Cir. 1974). Error as to the nature or object of a contract may be with regard to either the substance or the object of the agreement, or substantial quality of the object, or some other quality of the object if such quality is the principal cause of making the contract. Jefferson Truck *84 Equipment Co. v. Guarisco Motor Co., 250 So.2d 211 (La.App. 1st Cir.1971)."
The record discloses that the painting in question was advertised in the Morton's Auction Exchange, Inc. catalogue as a George Inness original work of art. The record establishes that Voitier had previously purchased an original George Inness painting and was anxious to add another original to his collection. In other words, the record makes crystal clear that Voitier was not interested in just any painting but rather that his principal motive was to acquire a George Inness original. In furtherance of this desire, Voitier paid the substantial price of $17,500.00 for the painting. It is equally clear from the record that Morton, the agent of Rotondaro, was fully aware of plaintiff's motive. Before submitting a bid, Voitier viewed the painting and exacted assurances from Morton's, albeit made in good faith, that the painting was an authentic original and that a letter of authenticity would accompany the painting. Under the circumstances present in this case and considering the applicable legal principles, we have little difficulty concluding that plaintiff has established his right to a rescission of the contract on the basis of unilateral error.
In the alternative, appellants urge that plaintiff agreed to a confection of the sale without any warranty because of a stipulation in Morton's catalogue which reads as follows:
"3. While Morton's has endeavored to catalogue and describe the property correctly, all property is sold `as is,' and neither Morton's nor its consignor will be responsible for the description, genuineness, provenance, or condition of the property. No statement contained in the catalogue or made orally at the sale or otherwise shall be deemed to be such a warranty or representation or an assumption of liability."
The trial court determined that the disclaimer of warranty was ineffective. We agree.
In Thibodeaux v. Meaux's Auto Sales, Inc., 364 So2d 1370 (La.App. 3rd Cir.1978), we stated:
"It is well established that, for a waiver of warranty to be effective, three requirements must be met:
"(1) The waiver must be written in clear and unambiguous terms;
"(2) The waiver must be contained in the sale and chattel mortgage document; and
"(3) The waiver must either be brought to the attention of the buyer or explained to him." Hendricks v. Horseless Carriage, Inc., 332 So.2d 892 (La. App. 2nd Cir.1976)."
An examination of the purported waiver and the record evidence reflects that the attempted disclaimer of warranty is ineffective.
The disclaimer of warranty is contained inside the front cover of the Morton's catalogue and does not appear anywhere in the bill of sale or invoice presented to Voitier by Morton's. Further, the purported disclaimer of warranty was neither brought to Voitier's attention nor explained to him at the time of sale. Rather, defendants made the disclaimer of warranty an issue only after problems with the authenticity of the painting arose. Finally, contrary to the purported catalogue disclaimer of warranty were the assurances of Morton that the painting was an original Inness. Under these circumstances, the learned trial judge correctly determined that the attempted disclaimer of warranty is without effect.

PRIVITY OF CONTRACT
As a basis for their exceptions of no cause and no right of action, appellants contend that the trial court erred in casting them in judgment because there is a lack of privity of contract between the defendants and plaintiff.
As to Rotondaro this is not a valid defense as Rotondaro is the owner of the painting and acted through his agent, Morton's, in selling same to plaintiff. As such, Rotondaro is ultimately liable for the authorized acts of his agent. La.C.C. art. 3021.
*85 As concerns Harrison, the facts dictate a different result. Harrison is not the owner of the painting and represented Rotondaro only in his dealings with Morton's. The record reflects no contact whatever, verbal or written, between Voitier and Harrison until after the sale was confected and problems arose concerning its authenticity. Consequently, there existed no privity whatever between Harrison and Voitier before the sale. In finding Harrison liable in solido with Rotondaro, the trial court stated, "[t]he privity between the consumer back up the line is not necessary to make Mr. Harrison and Mr. Rotondaro liable with Morton". We disagree. The basis for an agents personal responsibility to a third person with whom he contracts is found in the following Civil Code articles:
"Art. 3012. Acts beyond power with third person informed of authority
The mandatary, who has communicated his authority to a person with whom he contracts in that capacity, is not answerable to the latter for anything done beyond it, unless he has entered into a personal guarantee.
Art. 3013. Mandatary's liability to third persons
The mandatary is responsible to those with whom he contracts, only when he has bound himself personally, or when he has exceeded his authority without having exhibited his powers."
Thus, where an agent fails to disclose his status and his principal's identity, he can be held liable to a third person. Central Industries, Inc. v. Acadiana Reserves, Inc., et al., 420 So.2d 1241 (La.App. 3rd Cir. 1982), writ denied, 423 So.2d 1165 (La. 1982). Under the circumstances, there being no contractual privity between Harrison and Voitier, it necessarily follows that the latter has no cause of action against Harrison. We will amend the judgment accordingly.

DAMAGES
In addition to ordering a rescission of the sale, the trial court awarded certain damages itemized as follows:

1. Purchase price........... $17,500.00
2. Hammer fee10%....... 1,750.00
3. Sales tax.................. 1,101.39
4. Court reporter fees.......... 110.25
 146.88
5. Service of process in
foreign state.................... 50.00
6. Attorney's fees to obtain
deposition...................... 250.00
7. Freight to send painting
to expert....................... 183.85
 58.56
and Crating...................... 60.00
8. Mental anguish............. 2,500.00
 __________
 TOTAL............... $23,710.93[3]
In awarding damages, the trial court applied the provisions of La.C.C. art. 1934(1) and (3) (the substance of which is now contained in La.C.C. arts. 1995, 1996, 1998 and 1999), which reads in pertinent part as follows:
"Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:
1. When the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. By bad faith in this and the next rule, is not meant the mere breach of faith in not complying with the contract, but a designed breach of it from some motive of interest or ill will.

. . . . .
3. Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether * * on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether *86 in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule.
In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contract has been broken by the fault, negligence, fraud or bad faith of the debtor."
The trial court in reviewing La.C.C. art. 1934 obviously felt the damages awarded were reasonably contemplated by the parties. We fully agree with the trial court with the following comments.
The judgment clearly indicates the trial judge meant to award plaintiff reimbursement for all freight charges but inadvertantly omitted a portion of those costs. However, plaintiff neither appealed nor answered the appeal and we cannot amend the judgment to add these additional costs.
Defendants complain of the trial court award of "attorney's fees to obtain deposition". A review of the record reflects this award, $250.00, was not attorney's fees for obtaining the deposition, but the cost of deposition including the expert witness fee of Cikovsky, which is properly awardable as the deposition was introduced at trial.
The trial judge also miscalculated the sales tax which was paid by Voitier and to which he is entitled to reimbursement. The sales tax on the painting was $525.00. We will amend the judgment in that respect.
Defendant, Rotondaro, also questions the award for mental anguish made pursuant to La.C.C. art. 1934(3). Awards for non-pecuniary damages are generally not recoverable for breach of contract. However, when the principal object of the contract is intellectual gratification, such damages are properly allowed. Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976), and McManus v. Galaxy Carpet Mills, Inc., 433 So.2d 854 (La.App. 3rd Cir.1983). We find appellants' argument in this respect without merit.
For the above and foregoing reasons, the judgment of the trial court is reversed and set aside insofar as it casts David Harrison in judgment and, it is now ordered, adjudged and decreed that plaintiff's suit against David Harrison be dismissed with prejudice. The judgment in favor of plaintiff, M. Robert Voitier, Sr., against defendant, Fred Rotondaro, is affirmed but recast to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that Judgment issue herein in favor of Plaintiff, M. ROBERT VOITIER, SR., and against Defendant, FRED ROTONDARO, for the sum of $23,134.54, plus legal interest from date of judicial demand until paid, and for all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the painting which was the subject of this proceeding, be returned to Defendant, FRED ROTONDARO, upon payment of the judgment in full.
Defendant, Fred Rotondaro, is cast with all costs of this appeal.
REVERSED IN PART AND AFFIRMED IN PART AS AMENDED.
NOTES
[1] The trial court did not cast Antique Art Gallery, Inc. in judgment since the evidence reflected that Antique was incorporated subsequent to confection of the sale at issue.
[2] The substance of La. C.C. art. 2221 is now contained in C.C. art. 2032. The latter article, however, shortens to five years the prescriptive period for actions to declare a relative nullity contained in art. 2221, as amended by Acts 1980, No. 308.
[3] In his reasons for judgment and the trial court judgment, there is an error in addition. The total of the itemized damages comes to $23,710.93 not $23,610.93.