796 So.2d 733 (2001)
George W. CHAMBERS, III, Plaintiff-Appellee,
v.
Kenneth KENNINGTON, KDK Farms, Inc., Defendants-Appellants.
No. 35,079-CA.
Court of Appeal of Louisiana, Second Circuit.
September 28, 2001.
*734 Michael O. Craig, Benton, Counsel for Appellants.
M.F. "Rick" Fayard, Bossier City, Counsel for Appellee.
Before NORRIS, GASKINS & PEATROSS, JJ.
PEATROSS, J.
This appeal arises from a judgment ordering rescission of the sale of a John Deere tractor purchased by the plaintiff, George W. Chambers, at a farm auction on June 7, 1997. Judgment was rendered against Defendant, Kenny Kennington (incorrectly named as Kenneth in the pleadings and briefs), who conducted the auction of the tractor, and Mr. Kennington's company, KDK Farms, Inc. In addition, the trial court awarded Mr. Chambers $18,900, representing the purchase price of the tractor; damages in the amount of $2,881, representing repairs to the tractor paid for by Mr. Chambers; and attorney fees in the amount of $3,500. Mr. Kennington appeals, asserting the following four assignments of error: (1) the trial court erred in allowing the lawsuit to proceed without service on the previous owner of the tractor, Paul Wilson, who was a named defendant and an indispensable party under La. C.C.P. art. 641; (2) the trial court manifestly erred in ordering the rescission of the sale of the tractor; (3) the trial court erred in finding that the representation of the tractor by Mr. Kennington was fraudulent and the inducement for Mr. Chambers' purchase of the tractor; and (4) the trial court erred in rendering judgment against Mr. Kennington individually because he had previously filed bankruptcy. For the reasons stated herein, the judgment of the trial court is affirmed.

FACTS
Mr. Chambers purchased a John Deere 40/40 tractor at a livestock and farm equipment auction on June 7, 1997. The auction *735 was advertised to include items owned by Jack Tharpe of Sibley, Louisiana. The tractor purchased by Mr. Chambers, however, was not listed on the auction brochure, but, rather, was an "outside" piece of equipment being sold for an owner other than Mr. Tharpe. The record auctioneer was Charles Rollins Auction Company, with the advertised principal auctioneer being Doak Lambert. The record indicates, however, that the only person present and "auctioning off" equipment was Mr. Kennington. Charles Rollins Auction Company had hired KDK Farms, Inc., (which consisted of only Mr. Kennington) to actually conduct the auction.
The facts pertinent to the issues on appeal are those leading up to Mr. Chambers' purchase of the tractor and the representations made by Mr. Kennington regarding the tractor's origin. Prior to the auction, Mr. Chambers told a friend, Robert Stevenson (who is also Mr. Kennington's cousin), that he was looking for a tractor to purchase that could be used for general farm tasks such as tilling and baling. Sometime later, Mr. Kennington telephoned Mr. Stevenson and advised him that he was going to have a John Deere 40/40 tractor for sale at the Tharpe Auction. Mr. Stevenson testified that Mr. Kennington told him in that conversation that the tractor was an F.D.I.C. tractor, meaning that it had been repossessed from an individual and inspected by the F.D.I.C. Mr. Stevenson then contacted Mr. Chambers and told him of the tractor, that it was an F.D.I.C. tractor, and advised him that he should go to the auction and look at the tractor, which he did.
At the auction, immediately prior to the commencement of the bidding on the tractor, Mr. Kennington told Mr. Chambers and the other potential buyers that the tractor was an F.D.I.C. tractor. To potential buyers, this meant that the tractor had been repossessed by the F.D.I.C. from its previous owner rather than being one that the previous owner wanted to sell. In other words, having an origin in the F.D.I.C. rather than an individual owner made the tractor more attractive to potential buyers (who would bid more) because there was, more than likely, nothing about the tractor that made the previous owner want to sell it.
Just prior to auction, Mr. Chambers started the tractor's engine, but did not move it. Mr. Chambers testified that, immediately prior to starting the bidding on the tractor, Mr. Kennington announced to the crowd that the tractor was an F.D.I.C. tractor and that no bankers or F.D.I.C. employees could bid on it. Mr. Chambers won the bidding and bought the tractor. His check was made payable to Charles Rollins Auction Company.
With the assistance of his son, Mr. Chambers loaded the tractor onto his trailer and parked the trailer at his home until Monday morning when he delivered it to Columbia Equipment Company, owned and operated by Mr. Stevenson, for minor repairs to be made to it. After inspection by Jack Hicks, the service manager of Columbia, Mr. Chambers was informed that the tractor was in need of major repair. The invoice prepared by Mr. Hicks was introduced at trial and lists numerous problems, including replacing the clutch, transmission and brakes. In addition, there were metal shavings found in the oil and a tooth was broken off of the ring gear and pinion. The cost of repair was estimated to be, at the minimum, $15,000. Mr. Chambers authorized replacement of the clutch, which totaled $2,881, because the tractor could not be moved without this repair. (When Mr. Hicks "broke down" the tractor to inspect it, the clutch literally fell apart.)
*736 Mr. Chambers contacted Mr. Kennington, who offered to resell the tractor for him. According to Mr. Chambers, this was not an option because he did not want someone else to "buy" the same problem. Mr. Kennington refused to refund the purchase price; and, sometime later, Mr. Chambers discovered that the tractor had not been owned by the F.D.I.C., but by an individual named Paul Wilson.
Mr. Chambers named Paul Wilson as a defendant and, during deposition, asked Mr. Kennington where Mr. Wilson could be located. (There is some indication in the record that Mr. Kennington and Mr. Wilson were long-time, close friends.) Mr. Kennington provided an address in Canton, Mississippi. Mr. Chambers attempted, unsuccessfully, to locate and serve Mr. Wilson in Canton. After a continuance based on the failure to serve Mr. Wilson, the trial judge ordered Mr. Kennington to third party Mr. Wilson to insure that he would be served. Mr. Kennington refused to third party Mr. Wilson, but offered a different address for him in Camella, Georgia. The matter went to trial without Mr. Wilson. As previously stated, the trial court ordered rescission of the sale and awarded damages and attorney fees to Mr. Chambers.

DISCUSSION

Non-joinder of owner of tractor
In his first assignment of error, Mr. Kennington submits that Mr. Wilson was an indispensable party within the meaning of La. C.C.P. art. 641; and, therefore, proceeding with the trial of this matter in his absence was reversible error. We find no merit to this assignment.
La. C.C.P. art. 641 provides the circumstances wherein a party must be joined in an action for "just adjudication." Article 642 gives guidance to a court's determination of when joinder of a party is not feasible. These articles govern situations where the plaintiff has failed to join in the lawsuit a party whom the exceptor (or the court, if on its own motion) believes to be necessary to the adjudication of the claim(s) raised in the petition. There was, however, no "failure to join" such a party in the case sub judice. Mr. Wilson was a named defendant in Mr. Chambers' original petition and service on him was attempted. Failure to achieve service on a party, however, does not provide a basis for an article 641 exception for non-joinder.[1]
In addition, an undisclosed principal is not a necessary party defendant to a suit by the purchaser against an agent seeking rescission of a contract of sale. West v. Klumpp, 417 So.2d 125 (La.App. 3d Cir.1982) citing 3 C.J.S. Agency § 476. There is no question that Mr. Kennington failed to disclose the true identity of his principal; therefore, his principal, Mr. Wilson, was not a necessary party to the suit.
We will now address the propriety of the trial court's finding on the issue of fraud.

Fraud
Mr. Kennington calls the court's attention to Title 37 of Chapter 42 of the revised statutes, which governs the licensing and conduct of auctioneers. La. R.S. 3132 states:
3132. Representation as to quality and price

*737 At all such sales by auction any licensee shall at all times truly and correctly represent to the public attending the auction the actual facts in respect to the quality and manufacture of the items being offered for auction. It shall be a violation of this Chapter for any licensee hereunder to place what is popularly known in the trade as fictitious price tags on items sold at any such auction.
La. R.S. 3123 sets forth the penalties for violations of the chapter:
3123. Violations; penalties
A. Any person who engages in auctions without a valid license violates this Chapter.
B. Any person who violates any provisions of this Chapter or any rules and regulations adopted under its authority shall be fined not more than five hundred dollars or imprisoned not more than six months, or both, for each such violation. Each individual sale or act in connection with the conduct of an auction in violation of any provisions of this Chapter shall constitute a separate offense and violation of this Chapter.
Mr. Kennington argues that the above regulations only subject the record or principal auctioneer to liability for the sale of auctioned items. He further asserts that the intent of Title 37 is to protect auctioneers (such as himself) employed by the record or principal auctioneer (such as Charles Rollins Auction Company) from personal liability for the sale of items while the employed auctioneer was conducting the auction.
We, however, find Title 37 to be inapplicable to the case sub judice for the reasons expressed by the third circuit in Slaughter v. Guinn, 571 So.2d 876 (La. App. 3d Cir.1990):
La. R.S. 37:3132 establishes a rule of conduct for auctioneers, the violation of which rule subjects the auctioneer to punishment under another provision of Chapter 42, i.e., La. R.S. 37:3123. La. R.S. 37:3132 does not establish a separate cause of action for redress in favor of the public against auctioneers. Rather, an aggrieved party must still seek relief under theories of fraud or negligence.
It is clear, under Slaughter v. Guinn, that Title 37 does not provide a refuge for auctioneers who engage in conduct rising to the level of fraud or negligence. Moreover, Mr. Chambers' claim was not based on the above regulation; rather, his claim was in fraud. A purchaser such as Mr. Chambers can have a separate cause of action against the auctioneer under that theory and that is precisely what was pled and subsequently tried in this case. Finally, as Mr. Kennington points out, in Slaughter v. Guinn, there was no evidence that the Guinn brothers (auctioneer) intentionally misrepresented the model year of trucks purchased by Slaughter at auction and that lack of evidence precluded Slaughter from recovering in fraud. A finding of fraud, however, is a factual determination; and, therefore, we must examine the record in the case sub judice to determine if the trial court was clearly wrong in finding that Mr. Kennington did, in fact, fraudulently misrepresent the origin of the tractor. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Fraud is defined in La. C.C. art. 1953:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
La. C.C. art. 1955 provides as follows:
Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance *738 that has substantially influenced that consent.
First, we can find no error in the trial court's conclusion that Mr. Kennington fraudulently misrepresented the origin of the tractor. Mr. Chambers, as well as Mr. Stevenson, testified that Mr. Kennington represented the tractor, on more than one occasion, as being an F.D.I.C. tractor. Second, we cannot say that the trial court was clearly wrong in concluding that the representation that the tractor was an F.D.I.C. tractor substantially influenced Mr. Chambers' decision to purchase the tractor as required by article 1955. We have previously noted the significance of an F.D.I.C. origin to prospective purchasers and Mr. Chambers testified as to the importance of that factor in his decision to make the purchase:
Q: So why would the fact that it was an FDIC tractor mean that it was in good shape?
A: I was going by what Robert told me as far as theusually a FDIC tractor would be a repossession. It's a tractor that somebody wasn't really interested in getting rid of. They come up on some hard times and had to get rid of it. It would be a lot better than most of the time buying from an individual. I went over there and took the man at his word at what he told me. That's what made me interested in the tractor. Had it been something else, then I could have very easily gone the other direction.
In addition, Mr. Stevenson confirmed that it was important to him that the tractor was an F.D.I.C. tractor in recommending that Mr. Chambers go look at the tractor. A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong;" and, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The conclusion of the trial court is reasonable and supported by the record and will not, therefore, be disturbed on appeal.
Having concluded that the trial court's finding of fraud was not clearly wrong, we now turn to the issue of Mr. Kennington's liability as an agent and the appropriateness of the remedy allowed by the trial court. As previously stated, the trial court cited article 1958 as its basis for ordering rescission of the sale of the tractor, damages and attorney fees. Mr. Kennington argues that rescission is not an appropriate remedy against anyone other than the owner of the tractor. As a general rule, this statement is correct. See Castille v. Folck, 338 So.2d 328 (La.App. 3d Cir.1976). In addition, generally speaking, an agent, or auctioneer, is not responsible to third parties where his principal is disclosed. Newbaker v. Lanier, 497 So.2d 355 (La.App. 3d Cir.1986); West v. Klumpp, supra; Ingram v. Canal Bank & Trust Co., 13 La.App. 651, 127 So. 462 (La.App.Orleans 1930). It is well-settled, however, that an agent, or auctioneer, will be personally liable where he or she fails to disclose his or her status as an agent and the identity of the principal. Voitier v. Antique Art Gallery, 524 So.2d 80 (La. App. 3d Cir.1988), writ denied, 531 So.2d 271 (La.1988); Central Industries, Inc., v. Acadiana Reserves, Inc., 420 So.2d 1241 (La.App. 3d Cir.1982), writ denied, 423 So.2d 1165 (La.1982); Lagniappe of New Orleans, Ltd. v. Denmark, 330 So.2d 626 (La.App. 4th Cir.1976); See also 7 Am Jur 2d § 82 (An auctioneer who sells property *739 without disclosing the name of his principal will be considered as the vendor himself, and as such is responsible to the buyer.) The critical fact in the case sub judice, therefore, is that Mr. Kennington failed to disclose the identity of his principal. Moreover, not only did he fail to disclose Mr. Wilson's identity, he expressly and wilfully misrepresented his identity by stating that the tractor was an F.D.I.C. tractor. We find that Mr. Kennington's failure to disclose and misrepresentation of the identity of his principal subjects him to personal liability. We further conclude, therefore, that the trial court was correct in ordering rescission of the sale of the tractor and awarding additional damages and attorney fees under article 1958.

Bankruptcy
In his last assignment of error, Mr. Kennington argues that, because he was discharged in bankruptcy, the award against him individually is a nullity. There was no evidence presented to the trial court regarding Mr. Kennington's bankruptcy. The record contains only one brief reference to the same in the argument of counsel following the trial of this matter. As such, this issue is not properly before this court and will not be addressed.

DECREE
For the foregoing reasons, the judgment of the trial court rescinding the sale of the tractor and awarding return of the purchase price, damages and attorney fees to George W. Chambers, III, is affirmed. Costs of appeal are assessed to Kenny Kennington.
AFFIRMED.
NOTES
[1] The record supports Mr. Chambers' assertion that it was Mr. Kennington who provided an incorrect address for Mr. Wilson and, only after repeated requests from Mr. Chambers' counsel, supplied a second address for possible service. We reiterate that the trial judge ordered Mr. Kennington's counsel to file a third-party claim against Mr. Wilson to ensure that he was served, but Mr. Kennington refused to do so.